# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

SHAKIRA CABÁN-LÓPEZ, *et al.*,

Plaintiffs,

v.

CHRISTIAN E. CORTÉS-FELICIANO, *et al.*,

Defendants.

CIVIL NO. 22-1220 (HRV)

## OPINION AND ORDER

### I.    BACKGROUND

Plaintiffs Shakira Cabán-López, Mariana O. Peláez-Sánchez, Héctor Hernández-Ríos, Melvin Figueroa-Varela, and Edgardo Ramírez-Soto (collectively, "the Plaintiffs") filed suit against defendants Christian E. Cortés-Feliciano, Mayor of the Municipality of Aguada, Delvis Datiz-Ruiz, Marisol Rosa, Cadmiel López, Zulma Rivera, Luis Acevedo, Kelvin Cortés, Jairo Jiménez, and the Municipal Government of Aguada (collectively, "the Defendants"). Plaintiffs alleged that due to their political affiliation to the New Progressive Party ("NPP"), Defendants who are members or sympathizers of the Popular Democratic Party ("PDP") violated their First Amendment rights and subjected them to unreasonably inferior working conditions.

On August 19, 2025, Defendants filed a motion for summary judgment. (Docket No. 60). Plaintiffs filed their response in opposition on September 19, 2025. (Docket No. 74). On September 30, 2025, I issued an opinion and order granting in part and denying

1

in part Defendants' motion for summary judgment. The Court ruled in favor of Defendants regarding the salary adjustment claim, finding that said reductions were valid under Article 2.047(d) of the Puerto Rico Municipal Code. (Docket No. 76). The claims regarding workplace harassment survived. (*Id.*). Thereafter, the case was tried to a jury from November 10 through November 21, 2025. After the Plaintiffs rested their case, Defendants moved for judgment as matter of law pursuant to Fed. R. Civ. P. 50(a)(1)(A). (Docket No. 95). The undersigned denied the Rule 50(a) motion as to Plaintiffs Shakira Cabán-López, Melvin Figueroa-Varela, and Héctor Hernández-Ríos, and granted it as to Plaintiffs Mariana O. Peláez-Sánchez and Edgardo Ramírez-Soto, finding their claims time-barred. (Docket No. 96).

On November 21, 2025, the jury rendered a verdict in favor of Defendants. (Docket Nos. 105, 106, 107). As to Shakira Cabán-López, the jury found she was subjected to unreasonably inferior working conditions by Defendants Christian E. Cortés-Feliciano and Delvis Datiz-Ruiz but did not find that said unreasonably inferior employment conditions were implemented on account of her political affiliation. (Docket No. 105). As to Plaintiffs Héctor Hernández-Figueroa and Melvin Figueroa-Varela, the jury found that they were not subjected to unreasonably inferior working conditions. (Docket Nos. 106 and 107).

On December 22, 2025, Plaintiffs filed a "Motion for New Trial and to Alter or Amend Judgment under Fed. R. Civ. P. 59(a) and 59(e)," seeking to correct what they characterize as "a manifest miscarriage of justice resulting from a structural defect in the verdict form that prevented proper adjudication of Commonwealth law claims and to rectify errors of law in pretrial and trial rulings." (Docket No. 110). The next day,

2

December 23, 2025, Defendants opposed Plaintiffs' request for post-judgment remedies. (Docket No. 111). This matter is ripe for adjudication.

## II.   APPLICABLE LAW AND DISCUSSION

More specifically, Plaintiffs raise four issues in their motion for new trial and to alter judgment. First, as to Plaintiff Shakira Cabán-López, it is contended that a formatting instruction in the verdict form erroneously forced the jury to discard findings solely because they did not find that the inferior working conditions were politically motivated on the third question, preventing the jury from proceeding to consider state-law claims. Second, Plaintiffs Héctor Hernández-Rios and Melvin Figueroa-Varela maintain that the jury finding that there were not subjected to unreasonably inferior working conditions is contrary to the weight of the evidence and suggest the jury may have been confused by the standard of proof included in the jury instructions. Third, Mariana Peláez-Sánchez and Edgardo Ramírez-Soto claim that the court erred in dismissing their claims as a matter of law on statute of limitation grounds, a clear error of law in their view. Lastly, the Plaintiffs move the court to reconsider the decision to dismiss the salary reduction claim at the summary judgment stage asserting that it was legally erroneous. (Docket No. 110).

Defendants oppose Plaintiffs' request generally arguing that Plaintiffs have failed to carry the heavy burden that needs to be met in their quest to overturn the jury verdict. Defendants also point out that many if not all of Plaintiffs' post-judgment relief arguments have been waived for lack of contemporaneous objections. And, they also say that the motion is "conspicuously light on the law and in cogently exposed legal theories." (Docket No. 111 at 2).

3

## A.    Legal Framework

### 1.  Motions for New trial – Rule 59(a)

Pursuant to Rule 59(a), the Court may grant a new trial, on all or some of the issues, "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). "A trial court may 'set aside a jury's verdict and order a new trial only if the verdict is against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice.'" *Sindi v. El-Moslimany*, 896 F.3d 1, 13 (1st Cir. 2018) (citing *Sanchez v. P.R. Oil Co.*, 37 F.3d 712, 717 (1st Cir. 1994)). When deciding whether to grant a new trial, a district court is free to independently weigh the evidence. *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009) (citing *MacQuarrie v. Howard Johnson Co.*, 877 F.2d 126, 132 (1st Cir. 1989)). "However, courts do not enjoy unbridled freedom to grant new trials, because a jury verdict may only be overturned in the most 'compelling of circumstances' … [and] 'the trial judge must give due deference to the jury's constitutionally sanctioned role as finder of fact.'" *Guillemard-Ginorio v. Contreras*, No. 03-cv-2317 (PG), 2008 U.S. Dist. LEXIS 130854, 2008 WL 11424136, at *3 (D.P.R. Jun. 13, 2008). (internal citations omitted). "A trial judge may not upset the jury's verdict simply because he might have produced a different outcome had the facts been pled before him." *Echevarria v. Ruiz-Hernández*, 364 F. Supp. 2d 149, 151 (D.P.R. 2005) (citing *Velazquez v. Figueroa-Gomez*, 996 F.2d 425, 428 (1st Cir. 1993)).

### 2.  Motions to Amend or Alter Judgment – Rule 59(e)

In turn, Rule 59(e) permits a party to move the Court to alter or amend judgment by filing a motion within 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). "[The

4

rule] itself does not state the grounds on which relief under the rule may be granted, and [] district courts have considerable discretion in deciding whether to grant or deny a motion to alter or amend under Rule 59(e)." *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 190 (1st Cir. 2004). A motion for reconsideration under Rule 59(e) may only be granted if the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations. *See Palmer v. Champion Mortgage*, 465 F.3d 24, 30 (1st Cir. 2006); *see also Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005). A motion to alter or amend a judgment "should not, however, 'raise arguments which could, and should, have been made before judgment issued.'" *ACA Financial Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008) (quoting *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)).

**B.    Analysis[1]**

### 1. *Shakira Cabán-López's Motion for New Trial*

Plaintiff Shakira Cabán-López ("Cabán-López") argues that even though she did not formally object to the verdict form,[2] the "stop instruction" was legally erroneous on its face because Puerto Rico Act 90 of August 7, 2020, P.R. Laws Ann., tit. 29, § 3111, et seq. ("Act 90-2020") prohibiting workplace harassment or bullying and Article 1536 of

---

[1]    Plaintiffs failed to provide comprehensive legal argument and cited no authority in support of their request for relief. Their motion is skeletal, conclusory, and consisted mainly of bullet points.

[2]    On November 18, 2025, Defendants submitted proposed verdict forms. (Docket No. 98). Plaintiffs did not submit a proposed verdict form of their own. Moreover, on November 20, 2025, an in-chambers charge conference was held (Docket No. 100) where the jury instructions and verdict forms were discussed. No objections by either side were made to the jury instructions or verdict forms. Cabán-López argues, however, that she meets the plain error standard applicable to forfeited claims.

the Puerto Rico Civil Code, P.R. Laws. Ann. tit. 31, § 10801, do not require political motivation. (*See* Docket No. 110 at 3). Moreover, Cabán-López contends that by answering "yes" to questions 1 and 2, "the jury established the factual predicate for Law 90 liability," that is, intentional, unreasonably inferior treatment. (*Id.*). She emphasizes that the "stop instruction" prevented the jury from applying the facts to her state law theory and rendering a verdict in her favor as the affirmative answers to questions 1 and 2 constituted a *prima facie* finding of fault. (Docket No. 110 at 4). Plaintiff Cabán-López also states that to absolve Defendants of all liability simply because their malice was not proven to be "political" violates the remedial purpose of Puerto Rico's dignity laws and that a new trial limited to the state law claims is the only equitable remedy. (*Id.*).

Defendants respond that Cabán-López did not just fail to timely object to the verdict form and instructions; she also neglected to ask that the jury be charged with the legal standard for finding liability under either of the state statutes. (Docket No. 111 at 4). Defendants assert that while the complaint mentions supplemental state claims in a general way, neither Act 90-2020 nor the state law tort statute was cited in the five causes of action pled in the complaint. Defendants also contend that these statutes were a complement to Plaintiffs' central and sole theory of liability: political discrimination. As to the tort statute particularly, Defendants argue that the only tortious conduct that has ever been pled and attempted to be proven at trial is the intentional tort of political discrimination. (*Id.* at 5). Consequently, the jury was never instructed on any claims other than political discrimination. Defendants posit that Cabán-López should not be allowed to switch legal theories by way of a new trial motion after the one pursued did not prosper. (*Id.* at 6).

A meticulous review of the complaint shows that Plaintiffs perfunctorily mentioned state law violations twice: paragraphs 2 and 6. (*See* Docket No. 1). ("This Honorable Court also has jurisdiction over the state law claims under the Bill of Rights of the Constitution of the Commonwealth of Puerto Rico, Sections 1, 4, 6 and 7 of Article II, Act 90-2020[;] The facts hereinafter alleged in this complaint constitute violations of plaintiffs protected rights under Sections l, 4, 6 and 7 of Article II of the Constitution of the Commonwealth of Puerto Rico, Article 1536 of the Civil Code of Puerto Rico"). The complaint is devoid of any specific averment in any of the five causes of action listed regarding the alleged state law violations. In the pretrial memorandum submitted by the parties, the only mention of the state law violations is at page 2 and an almost word-by-word relation of the scant mentions in the complaint. (*See* Docket No. 82).

Having not developed any argument as to the state law violations throughout the life of the case, Plaintiff cannot now seek a new trial based on claims that were not properly pursued. *United States v. Zaninno*, 895 F.2d 1, 17 (1st Cir. 1990). Moreover, the failure to object to the substantive jury instructions and the verdict form defeats any attempt by Cabán-López to obtain a new trial for she cannot show plain error. *See Moore v. Murphy*, 47 F.3d 8, 11 (1st Cir. 1995) (noting that "[s]ilence after instructions, including instructions on the form of the verdict to be returned by the jury, typically constitutes a waiver of any objections" and plain error review "is reserved for use in only the most egregious circumstances."). Finally, where as here, the theory of liability has been "wholly grounded in [her] allegations of political discrimination," the First Circuit is likely to uphold the district court's rejection of any attempts by Plaintiff to "pivot" in a post-verdict motion. *Badillo-Crespo v. Cortés-Feliciano*, No. 24-1167, 2025 WL 2416498,

2025 U.S. App. LEXIS 21506, at *2 (1st Cir. August 11, 2025) (affirming the denial of post-verdict relief as not an abuse of discretion under circumstances very similar to this case).

Additionally, I find merit in Defendants' contention that any Act 90-2020 claim fails for failure to exhaust mediation remedies. Cabán-López has not offered any evidence pre-trial or at trial that she exhausted the alternative dispute resolution process that is a prerequisite under the Act 90-2020 to bring a claim of workplace bullying. Section 10 of Act 90-2020 provides that if a person claims to be a victim of workplace bullying, he or she shall state so by following the procedure and "protocol established by the employer", and if unsuccessful in redressing his or her grievance, that aggrieved employee "shall resort to the Alternative Dispute Resolution Bureau of the Judicial Branch." P.R. Laws Ann., tit. 29, § 3120. The statute continues that "[i]f, after having received mediation orientations, the parties decide not to submit to mediation or the mediator does not recommend mediation, the parties may resort to the appropriate part of the competent court by presenting evidence showing that the alternative method has been exhausted . . . ." *Id.*

During trial, Plaintiff testified, among other things, about how after being reinstated back to her career position as a human resources analyst she suffered adverse employment actions such as her access to the HR software being terminated and the photocopier incident that also resulted in access to said equipment being removed. She also testified feeling distressed because when she requested a transfer to the Public Works Department, Defendants only provided her with two options: the ornate division or the cemetery. She ultimately chose the ornate division but said that she had no

telephone or internet, that she was isolated, and endured a bathroom situation that was untenable. After hearing her testimony, the jury found that she indeed suffered unreasonably inferior conditions but not because of her political affiliation.

Assuming for the sake of argument that the above-stated inferior employment conditions are cognizable as workplace harassment under Act 90-2020, the complaint filed by Cabán-López still lacked any indication that the required alternative dispute resolution process was pursued. Her testimony at trial did not establish either that she exhausted the mediation proceedings that the statute imposes as a sine qua non prerequisite to filing an action pursuant to Act 90-2020. *See Zaninno*, 895 F.2d at 17. Thus, she never had a properly exhausted claim under Act 90-2020. And her attempt now to obtain a new trial by recasting her political discrimination claim to include a workplace bullying cause of action is too little too late. As for the purported tort claim under Article 1536, she testified that she had been discriminated against because of her political affiliation, suggesting that any tortious conduct was intentional due to political discrimination as opposed to merely negligent. And the jury found against her on that issue. Again, district courts "may set aside a jury's verdict and order a new trial only if the verdict is so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice." *Federico v. Order of Saint Benedict in Rhode Island*, 64 F.3d 1, 5 (1st Cir. 1995). I find that there will be no miscarriage of justice if the verdict is allowed to stand. Therefore, Cabán-López's motion for new trial is DENIED.

### 2. *Héctor Hernández-Ríos & Melvin Figueroa-Varela*

Plaintiffs Héctor Hernández-Ríos ("Hernández-Ríos") and Melvin Figueroa-Varela ("Figueroa-Varela") also seek a new trial because, according to them, the verdict

was against the clear weight of the "uncontradicted" evidence. Hernández-Ríos testified that he was stripped of all supervisory duties and was left with no meaningful work. Figueroa-Varela testified he was removed from his directorship and assigned to menial tasks in an isolated location. Both have claimed throughout that said conditions were unreasonable inferior on account of their political beliefs and now argue that the jury got it wrong when it found to the contrary. They also suggest that the jury may have been confused by the clear and convincing evidence standard instructed, failing to consider the lower preponderance of the evidence standard applicable to state law claims. (Docket No. 110 at 4-5). Defendants riposte that far from uncontradicted, both Plaintiffs were confronted with conflicting deposition testimony, and the jury ultimately evaluated their credibility against the testimonies of Defendants and other witnesses that contradicted their versions.  I agree.

Attempting to set aside a jury verdict because the jury did not believe his or her side of the story is an uphill battle for any plaintiff. Both Hernández-Ríos and Figueroa-Varela testified about what transpired when they returned to their career positions, the reduction of their duties, and how they felt about the situation. Hernández-Ríos talked about how he felt discriminated because of his affiliation to the NPP and how he was the only employee who worked all the holidays while employees affiliated to the PDP had some holidays off. For his part, Figueroa-Varela testified that he had an accident and when he returned, he was assigned janitorial duties. He also testified that as a consequence of the allegedly discriminatory conduct of the Defendants, he suffered a heart attack that led him to retire and request social security benefits.

Defendants, however, gave versions of the events that differed from the accounts provided by these Plaintiffs. For instance, defendant Kelvin Cortés-Ruíz testified that he had a good relationship with Hernández-Ríos, that he participated in political campaigns for both the NPP and the PDP, and that emergency management division employees were assigned work on holidays equitably. Defendant Jairo Jiménez-Chaparro testified that he had an excellent relationship with Hernández-Ríos and that duties were assigned to him daily. As to Figueroa-Varela, Defendant Luis Ángel Acevedo-Jiménez testified that he has known him since childhood, that Figueroa-Varela never raised a claim about the so-called situation to him, and that the elderly center was supervised by the Puerto Rico Family Department and not by the Municipality of Aguada. The testimonies also called into question the allegation that Figueroa-Varela was assigned janitorial duties at the elderly center.

Rule 59(a) allows the trial judge to "'independently weigh the evidence'" and, further, "the judge 'may consider the credibility of the witnesses who testified.'" *Maroney as Trustee of Premiere Realty Trust v. Fiorentini*, 732 F. Supp. 3d 127, 136 (D. Mass 2024) (quoting *Jones ex rel. U.S. v. Mass. Gen. Hosp.*, 780 F.3d 479, 492 (1st Cir. 2015)). Nevertheless, "[i]n general, conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial." *Id.* (quoting *Blomquist v. Horned Dorset Primavera, Inc.*, 925 F.3d 541, 546 (1st Cir. 2019)). "[T]he trial judge's discretion [to grant a new trial], although great, must be exercised with due regard to the rights of both parties to have questions which are fairly open resolved finally by the jury at a single trial." *Ahern v. Scholz*, 85 F.3d 774, 780 (1st Cir. 1996) (quoting *Coffran v. Hitchcock Clinic, Inc.*, 683 F.2d 5, 6 (1st Cir. 1982)).

11

Here, the jury heard Plaintiffs' testimonies as well as Defendants' testimonies and ultimately assigned credibility to the Defendants, finding in their favor. There is no miscarriage of justice requiring that the Court step in to set aside the verdict and grant a new trial. *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d at 717 (holding that a new trial may be granted only if the evidence is "grotesquely lopsided" in favor of the movant, and if it is obvious that the jury verdict, if allowed to stand, would result in a blatant miscarriage of justice). Accordingly, the motion for a new trial filed by Hernández-Ríos and Figueroa-Varela is also DENIED.

### 3. *Peláez-Sánchez and Ramírez-Soto's Rule 59(e) Motion*

Plaintiffs Mariana Peláez-Sánchez ("Peláez-Sánchez") and Edgardo Ramírez-Soto ("Ramírez-Soto") move the Court to reconsider the ruling of the undersigned that dismissed their claims on statute of limitations grounds. Plaintiffs argue, citing to *AMTRAK v. Morgan*, 536 U.S. 101 (2002), that a hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice and that the continuing violation doctrine apply to make their claims timely. On this score, Peláez-Sánchez and Ramírez-Soto alleged a continuous pattern of marginalization, such as not being assigned duties, being isolated, and undergoing an audit, that extended well into the one-year limitations period.

Defendants respond that *Morgan* involved racial discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, not a First Amendment political discrimination claim under 42 U.S.C. § 1983. They also argue that it was established at trial that the continuing violation theory was inapplicable to claims of deprivation of duties and inferior working conditions. As to the continuous pattern of marginalization,

Defendants posit that caselaw from the First Circuit has placed the date of accrual at the point in which the alleged deprivation of duties occurred, regardless of how long that state of affairs may have lasted. And that the evidence at trial established that both Plaintiffs learned about the purported inferior employment conditions on a date that falls outside the limitation period. (Docket No. 111 at 10).

I find, as I did at trial when I granted the Defendants' Rule 50(a) motion, that the continuing violation doctrine is not applicable to the facts of this case. "Under the 'continuing violation' doctrine, a plaintiff may obtain recovery for discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period." *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009). "However, this doctrine does not apply to 'discrete acts' of alleged discrimination that occur on a 'particular day' . . . [i]nstead, it applies only to claims that cannot be said to occur on a particular day and that by their very nature require repeated conduct to establish an actionable claim." *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015). The continuing violation doctrine "does not allow a plaintiff to avoid filing suit [in a timely fashion] so long as some person continues to violate his [or her] rights." *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008) (emphasis omitted); *see also Bonilla v. Trebol Motors Corp.*, 913 F. Supp. 655, 659-60 (D.P.R. 1995). Moreover, the doctrine does not apply to discrete acts that are "instantaneously actionable" – for example, as in this case, the removal or reduction of duties and responsibilities or the failure to provide a computer in working condition. *See Ayala*, 780 F.3d at 57. Again "the one-year statute of limitations for these discrete acts (and, by extension, Plaintiff[s'] Section 1983 claims) begins to run upon their initial occurrence, even if Plaintiff[s] continue[] to feel the

effect[s] of such adverse employment action." *Ruiz-Lugo v. Municipality of San Juan*, 382 F. Supp. 3d 173, 175 (D.P.R. 2019); *see also Shervin v. Partners Healthcare Sys., Inc.*, 804 F.3d 23, 34 (1st Cir. 2015) (noting that a claim accrues as a discrete act of discrimination "when it has a crystallized and tangible effect on the employee" is felt and the employee has notice of both the adverse act and the discriminatory nature of it.); *Rae v. Woburn Pub. Sch.*, 113 F.4th 86, 102 (1st Cir. 2024).

Here, Plaintiffs' claims accrued on the date they learned of the reduction of duties or inferior working conditions. For example, Peláez-Sánchez's central allegation is that her duties were reduced, her Rock-Solid platform access revoked, and that she was transferred to another department (in March 2021) shortly after the new mayor took office. The evidence established that she learned of these purported politically motivated adverse employment actions more than a year before she filed her lawsuit in May 2022. So did Ramírez-Soto. He testified that from the beginning as early as January 2021, his computer was not in proper working condition, thus depriving him of the ability to perform his duties. He testified that he informed his supervisor but no action was taken to remedy the situation. These discrete acts of alleged political discrimination fall outside of the limitations period even if other acts or the effects of the initial occurrences continued to be felt by Plaintiffs within the limitations period. Because I find that there was no manifest error of law or fact in my ruling as to the statute of limitations issue, I decline the invitation to reconsider.

### 4. *Salary Adjustment Claims Dismissed on Summary Judgment*

Lastly, the Plaintiffs seek reconsideration of my ruling dismissing their reduction of salaries claim. They argue that my ruling conflated the (municipal) legislature's power

to approve classification plans with the executive power to make individual personnel adjustments. And that they proffered evidence that their salary reductions were not part of a uniform fiscal plan but were arbitrary, punitive acts targeting them specifically. Plaintiffs sustain that my ruling removed a central component of the hostile work environment claim from the jury's consideration and that the trier of fact should have been allowed to determine if the salary reductions constituted harassment under Act 90-2020. (Docket No. 110 at 5).

Defendants respond that they lack knowledge of the alleged "uniform fiscal plan" Plaintiffs refer to in their motion. They contend that what was at issue was the Municipality's classification and compensation plan, a document required by law. Further, Defendants underscore my finding in the opinion and order, one that remains uncontested, that Plaintiffs were not the only reinstated employees as to whom recommendations for salary reductions were made. Regarding Act 90-2020, Defendants insist that the argument was never raised in the pleadings nor in their opposition to summary judgment. Furthermore, Defendants claim to be "at a loss" in trying to understand how an alleged unlawful salary adjustment would meet the definition of workplace bullying under the Act 90-2020. (Docket No. 111 at 8-9).

Plaintiffs woefully fail to show a manifest error of law in my determination that summary judgment was warranted with respect to the salary reductions claim. I thoroughly explained in my opinion and order why there was no genuine issue of material fact that the prior mayor unlawfully established a compensation and classification plan that allowed Plaintiffs to return to their career positions maintaining their salaries as trust employees. I have not been put in a position to find that I erred in

my conclusion that such plan had to be approved by the municipal legislature under the law, but it was not. Therefore, there was no triable issue that the Defendants proffered a legitimate non-discriminatory reason for the salary reductions, namely, that the Plaintiffs' compensation was maintained through the unlawful acts of the former mayor. Moreover, inasmuch as the record showed that the salaries were adjusted across the board and not only as to members of the mayor's rival political party, no pretext could be established either. Lastly, I will not entertain at this stage the new argument that the salary reduction issue should have been submitted to the jury as part of an undeveloped Act 90-2020 claim. Rule 59(e) motions are "aimed at reconsideration, not initial consideration." *F.D.I.C. v. World University Inc.*, 978 F.2d 10, 16 (1st Cir. 1992). Such motions must either clearly establish a manifest error of law or must present newly discovered evidence; they may not be used to argue a new legal theory. *Id.*

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for New Trial and to Alter or Amend Judgment (Docket No. 110) is **DENIED in its entirety**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 20th day of March, 2026.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE

16